**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SAMPSON MCKOY, JR.,
                *Plaintiff-Appellee,*

v.

INTERNATIONAL PAPER COMPANY,
                *Defendant-Appellant,*

and

METROPOLITAN LIFE INSURANCE
COMPANY, d/b/a Metlife; WAUSAU
BENEFITS, INCORPORATED,
                *Defendants.*

No. 06-1795

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Louise W. Flanagan, Chief District Judge.
(7:04-cv-00138-FL)

Argued: March 12, 2007

Decided: June 12, 2007

Before NIEMEYER, MOTZ, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Motz and Judge Duncan joined.

## COUNSEL

**ARGUED:** Bruce McCoy Steen, MCGUIREWOODS, L.L.P., Charlotte, North Carolina, for Appellant. James B. Gillespie, Jr., Wilming-

ton, North Carolina, for Appellee. **ON BRIEF:** Susan P. Dion, MCGUIREWOODS, L.L.P., Charlotte, North Carolina, for Appellant.

---

**OPINION**

NIEMEYER, Circuit Judge:

Sampson McKoy commenced this action under § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), against International Paper Company, his employer and sponsor of an ERISA plan, for disability retirement benefits. Although the plan had paid McKoy short-term disability benefits in 2002 based on a shoulder injury, it twice denied McKoy disability retirement benefits because he was capable of sedentary or light work and therefore not totally and permanently disabled, as required by the plan. After McKoy supplied new information from the Social Security Administration, a psychologist, a vocational evaluator, and an internist, demonstrating substantial cognitive deficits in addition to his physical injury, the plan again denied benefits.

On cross-motions for summary judgment, the district court concluded that International Paper's denial of McKoy's claims was procedurally and substantively unreasonable and therefore constituted an abuse of discretion. Based on our de novo review, we affirm.

McKoy, a 58-year-old man who had worked for International Paper for 30 years, was provided short-term disability benefits in December 2002, when he became unable to perform his job because he had suffered a torn rotator cuff. His job was to manage reel profiles and reel quality on industrial paper machines, which involved heavy manual labor. Repair surgery and later subacromial decompression surgery failed to restore his ability to do his job. Because International Paper could offer him no other position, he was discharged.

When McKoy, acting *pro se*, applied for disability retirement benefits based on his claim that he was totally and permanently disabled, the plan denied benefits because he was unable to show, as the plan required, that he was "incapable of performing any occupation or

employment for which [he was] qualified by education, training or experience and which [was] likely to be permanent during the remainder of [his] life." The reports that he attached to his application — from his treating orthopedist, Dr. Carl Basamania, and a physical therapist, Faye Tripp — concluded that he had but "slight limitation of functional capacity" and was "capable of light work." In addition, the orthopedist to whom International Paper referred McKoy's claim reached a similar conclusion.

McKoy appealed the decision, and Wausau Benefits, a contractor that International Paper retained to assist in administering the plan, referred McKoy's file to another orthopedist, who confirmed that McKoy was not disabled. Accordingly, the plan denied McKoy's claim a second time.

McKoy then hired counsel, who requested that the plan reopen McKoy's file and consider new information relating to McKoy's cognitive functioning. Susan Williamson, a human resources officer at International Paper, who had seen a Social Security Administration order awarding McKoy disability benefits, wrote a memorandum to the plan, recommending that McKoy's file be reopened. The plan did so and considered the new information that McKoy supplied.

McKoy supplied four new pieces of information to Wausau Benefits. *First*, the Social Security Administration, emphasizing McKoy's "borderline intellectual functioning," had approved McKoy's disability benefits claim, finding that he "was unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." *Second*, Henry Tonn, a psychologist, had performed a psychological evaluation of McKoy. He concluded that McKoy had a verbal IQ of 83, a performance IQ of 69, and a full scale IQ of 75. McKoy could read at the fourth grade level, spell at the third grade level, and do arithmetic at the fifth grade level. *Third*, internist Dr. Wesley Johnson prepared an examination report, concluding that the combination of McKoy's low cognitive function, shoulder injury, high blood pressure, and diabetes rendered "Mr. McKoy 100% disabled and . . . unable to sustain gainful employment." *Fourth*, Stephen Carpenter, a certified vocational consultant, evaluated McKoy's relevant work skills — ability to learn, memory, judgment, endurance, motor speed, clerical skills, and hand and finger

dexterity — as poor, with many in the bottom one percent. He also found low cognitive ability — with skills in reading, spelling, and math between the first and third percentile. Carpenter concluded that McKoy was unable to work:

> [I]n spite of the client's long stable work history as a back tender with related skills, his skills will not transfer to jobs at less than medium to heavy. His skills are also narrow since he was in the paper manufacturing industry, and they will generally only transfer to related labor intensive paper manufacturing jobs.

> * * *

> Interpreted into vocational function, in my opinion, this means that he may be able to stand and/or walk one hour and sit three hours during a normal 8 hour day, indicating that he is able to only do part time sedentary to light work. . . .

> Based on the severe loss of function as reported in the medical records, associated with marked loss of vocational function as reported in this evaluation, it is my opinion that the client is not employable and should retire.

Wausau Benefits referred the new information, together with McKoy's original file, to yet another consulting orthopedist, Dr. Leela Rangaswamy. Dr. Rangaswamy issued a cursory opinion. After she correctly summarized McKoy's medical history and correctly recited the definition of "disability" under the plan, she declared:

> The analysis by Stephen Carpenter essentially describes a cognitively limited individual who was functionally illiterate and mentally handicapped. These issues are inherent and reflect his level of cognitive development.

> There are no clinical data that document physical limitations that preclude any employment. Therefore, he is not disabled. The issue of cognitive limitation is related to his IQ which is in the category of borderline retarded.

On the basis of Dr. Rangaswamy's report, the plan denied McKoy's application for disability retirement benefits, now for the third time. McKoy then commenced this action.

Because the plan's decision was based on an exercise of discretion conferred by the terms of the plan, judicial review is for abuse of discretion. *See Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335 (4th Cir. 2000). Even so, an administrator is required to use a deliberate, principled reasoning process and to support its decision with substantial evidence. *See Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997); *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 787 (4th Cir. 1995).

After reviewing the record, the plan's process, and the reasoning the plan used to deny benefits, we affirm the conclusions reached by the district court.

The record shows that McKoy's *physical* disability left him without the ability to perform heavy manual labor of the type he had been performing at the time of his shoulder injury. Moreover, International Paper was unable to find any position for McKoy, even though it was a sizable company with over 90,000 employees. Standing alone, McKoy's physical disability might have allowed him to do sedentary or light work. Indeed, on this basis alone International Paper concluded that McKoy was not disabled. As Dr. Rangaswamy, whose opinion formed the basis for finally denying McKoy's claim, said, "There are no clinical data that document *physical limitations* that preclude any employment. Therefore, he is not disabled."

Even in its brief on appeal, International Paper relies on the opinions of the various orthopedists whom it consulted — all addressing McKoy's *physical* condition. None of the orthopedists squarely addressed his mental condition, and, as orthopedists, none was probably qualified to give a professional opinion on McKoy's mental condition. International Paper's reliance on scattered background statements in these opinions is unreasonable in light of the scope of the opinions themselves and the substantial evidence that McKoy submitted on his mental condition. While Dr. Rangaswamy recognized McKoy's "cognitive limitation," noting that McKoy was "functionally illiterate and mentally handicapped," she dismissed that issue as being "related to his IQ which is in the category of borderline retarded,"

which she apparently did not consider to be relevant. Her opinion, as well as International Paper's decision, focused on McKoy's *physical* disability and failed to take into account McKoy's borderline retardation, as if his mental condition could not contribute to a finding of disability under the plan. Yet the plan defines "disability" as a "medically determinable physical *or mental* impairment." (Emphasis added).

In sum, the plan's denial of benefits rested on an unreasonable failure to determine McKoy's mental condition, resulting in an unreasonable application of the plan's definition of "disability."

The plan's procedure in addressing McKoy's claim after it reopened the file was similarly unreasonable. While the plan acted reasonably in reopening McKoy's file upon receiving his new information, thereafter it did virtually nothing to evaluate McKoy's mental capacity. Despite the fact that the file was reopened solely to permit McKoy to present evidence of his *mental* disability, the file was thereafter evaluated *only* by an orthopedist. And the orthopedist's response explicitly reflected an inability to evaluate the data on mental disability, a failure to understand that the plan's definition of disability included mental disabilities, or both. Wausau Benefits' actions on behalf of the plan — referring the claim only to the orthopedist and relying on her report to deny benefits — were thus procedurally unreasonable.

Accordingly, we affirm the judgment of the district court to that effect.

International Paper also challenges the district court's discretionary award of attorneys fees under *Quesinberry v. Life Ins. Co.*, 987 F.2d 1017, 1029 (4th Cir. 1993). We have reviewed the parties' arguments and find that the district court acted within its discretion.

*AFFIRMED*